# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**IRVING J. MARQUEZ,**

        **Plaintiff,**

**v.**                                                          No._____

                                                              **Jury Requested**

**BOARD OF COUNTY COMMISSIONERS OF
EDDY COUNTY, VICTOR E. MARTINEZ JR., DARREN JONES,
ERNEST J. MENDOZA in his individual capacity and
in his official capacity as the elected Sheriff of the Eddy
County Sheriff's Department, RUTH ANN WALKER,
SHAWN FUNK in his Individual capacity and in his official capacity as
the acting warden of the Eddy County Detention
Center, SAL REY SALCIDO, and DANETTE MARTINEZ,**

        **Defendants.**

## COMPLAINT TO RECOVER DAMAGES FOR DEPRIVATION OF CIVIL RIGHTS AND STATE TORT CLAIMS

        Mr. Irving Jose Marquez, the Plaintiff, brings this Complaint for violation of his civil rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. Section 1983 and Section 1988 seeking to redress the violations of his Constitutional Rights under the United States and New Mexico Constitutions and other claims under the New Mexico Tort Claims Act and New Mexico law, and by and through his attorneys of record, Carter & Valle Law Firm (C.D. Carter III, Richard J. Valle, and Susan H. Widner) and Coyte Law PC (Matthew Coyte), and for his cause of action against the Defendants, states as follows:

## JURISDICTION AND VENUE

1.       Jurisdiction is proper pursuant to 28 U.S.C. Sections 1331 and 1343 and 42 U.S.C. Section 1983.  Venue is proper in this District as the acts complained of occurred in New Mexico.

2.       As to the pendent state claims over which this Court has jurisdiction, Plaintiff has given the Defendants actual notice of his claims and his intent to sue under the New Mexico Tort Claims Act as required by NMSA Section 41-4-16.

## PARTIES

3.       Mr. Irving Jose Marquez, the Plaintiff, is an individual and a resident of El Paso County, El Paso, Texas.

4.       Defendant Board of County Commissioners of Eddy County (hereinafter referred to as the "County") is a governing entity within Eddy County, State of New Mexico.

5.       At all times relevant hereto the County was responsible for the operations of the Eddy County Sheriff's Department, its officers, deputies, employees, contractors, and agents and for the hiring, screening, training and supervision of those Sheriff Department persons mentioned by name and/or by category herein.

6.      At all times relevant hereto the County was responsible for the operations of the Eddy County Detention Center, its officers, staff members, employees, contractors and agents and for the screening, hiring, training and supervision of those Detention Center persons mentioned by name and/or category herein.

7.      On information and belief, Defendant Martinez Jr. was at all times a Deputy with the Eddy County Sheriff's office and a resident of Eddy County. At all relevant times, Defendant Martinez Jr. was an employee of the Defendant County.  In connection with Mr. Marquez' Section 1983 claims, Defendant Martinez Jr. was acting under color of state law and within the course and scope of his employment.

8.      On information and belief, Defendant Darren Jones, was at all times a Reserve Deputy with the Eddy County Sheriff's office and a resident of Eddy County.  At all relevant times, Defendant Jones was an employee of the Defendant County.  In connection with Mr. Marquez' Section 1983 claims, Defendant Jones was acting under color of state law and within the course and scope of his employment.

9.      Upon information and belief, Defendant Mendoza was at a material times the duly-elected Sheriff of Eddy County and a resident of Eddy County.  At all times alleged herein, Defendant Mendoza acted under color of law and within the course and scope of his employment duties as the Eddy County Sheriff.  At those times, Defendant Mendoza was a final decision-maker and policy-maker

3

for the Eddy County Sheriff's Department and for the County in regard to law enforcement matters. For purposes of 42 U.S.C. Section 1983, Mendoza was acting under color of state law and within the course and scope of his employment. In connection with Mr. Marquez' Section 1983 claims, Mendoza is sued individually and in his official capacity as Sheriff of Eddy County. Mendoza was responsible for the screening, hiring, training, monitoring, supervision and disciplining of subordinate employees of the Eddy County Sheriff's Department.

10.     On information and belief, Defendant Walker was at all pertinent times an employee the County employed to provide professional medical nursing services at the Eddy County Detention Center and a resident of Eddy County. In connection with Mr. Marquez' Section 1983 claims, Defendant Walker was acting under color of state law and within the course and scope of her employment at all material times.

11.     On information and belief, Defendant Funk was at all pertinent times the acting warden of the Eddy County Detention Center. The County and Defendant Funk were responsible for the screening, hiring, training, monitoring, supervision and disciplining of subordinate employees of the Eddy County Detention Center. In connection with Mr. Marquez' Section 1983 claims, Defendant Funk is sued individually and in his official capacity as the acting warden of the Eddy County Detention Center. For purposes of 42

U.S.C. Section 1983, Defendant Fund was acting under color of state law and within the course and scope of his employment at all material times.

12.      On information and belief, Defendant Sal Rey Salcido was at all times an employee of the Eddy County Detention Center and a resident of Eddy County. At all relevant times, Defendant Salcido was an employee of the Defendant County.  In connection with Mr. Marquez' Section 1983 claims, Defendant Salcido was acting under color of state law and within the course and scope of his employment at all material times.

13.      On information and belief, Defendant Danette Martinez was at all times an employee of the Eddy County Detention Center and a resident of Eddy County. At all relevant times, Defendant Danette Martinez was an employee of the Defendant County.  In connection with Mr. Marquez' Section 1983 claims, Defendant Danette Martinez was acting under color of state law and within the course and scope of her employment at all material times.

### FOURTEENTH AMENDMENT
### FAILURE TO PROVIDE ADEQUATE MEDICAL CARE

14.      Plaintiff hereby incorporates by reference all prior allegations as if they were stated herein in full.

15.      As a pretrial detainee, Mr. Marquez has a Fourteenth Amendment right to adequate medical care.

16.     Each of the Defendants violated Mr. Marquez' Fourteenth Amendment right to medical care and caused serious life threatening and life altering injury to him.

## COUNT I.     DEFENDANTS MARTINEZ JR. AND JONES VIOLATIONS OF MR. MARQUEZ' FOURTEENTH AMENDMENT RIGHT TO ADEQUATE MEDICAL CARE

17.     Plaintiff hereby incorporates by reference all prior allegations as if they were stated herein in full.

18.     On September 24, 2009, shortly after 7:00 a.m., Mr. Irving Jose Marquez was driving his truck in Eddy County, New Mexico.

19.     Mr. Marquez was suffering from advanced symptoms of West Nile Virus.

20.     Mr. Marquez was running a temperature.

21.     Mr. Marquez was exhibiting clear signs of a person in need of medical attention.

22.     Defendants Martinez Jr. and Jones stopped Mr. Marquez and began a driving while intoxicated / driving under the influence (d.w.i / d.u.i) investigation of Mr. Marquez.

23.     The obligation to provide medical care begins when Mr. Marquez is detained at the roadside by Defendants Martinez Jr. and Jones.

24.     When Defendants Martinez Jr. and Jones began investigating Plaintiff for
his erratic driving, it became clear Plaintiff was not under the influence of
alcohol.

25.     During the investigation, Mr. Marquez exhibited clear signs of a person in
need of medical attention.

26.     During the investigation, Mr. Marquez informed these Defendants that he
was sick and had previously taken Nyquil due to illness.

27.     Plaintiff submitted to a breath test which revealed a score of zero.

28.     Plaintiff cooperated with Defendants' investigation and was polite and
compliant throughout the questioning.

29.     Plaintiff denied using alcohol or other drugs or medications.

30.     After Mr. Marquez repeatedly denied using any illegal substances
Defendant Martinez Jr. states to Mr. Marquez, "I don't think you are under the
influence, but to be driving like that something is wrong."

31.     Defendant Martinez Jr. also asked Mr. Marquez if there was anyone
available to pick him up "right now," as he is clearly not fit to drive.

32.     Defendants described Plaintiff's behavior as being "kind of funky."

33.     Defendants discussed the possibility that Plaintiff was a diabetic.

34.     During this time Plaintiff exhibited obvious symptoms of a neurological
disorder.

35.     During this time Defendants Martinez Jr. and Jones knew Mr. Marquez
        was exhibiting obvious symptoms of a person in need of medical attention.

36.     Mr. Marquez was suffering a high temperature.

37.     Mr. Marquez was unable to stand properly or maintain his balance.

38.     After Mr. Marquez's breath test revealed "0.00" alcohol, Defendants knew
        Mr. Marquez was not on alcohol or drugs, but nonetheless inappropriately had
        him take field sobriety tests solely for the purpose of detaining Mr. Marquez.

39.     Instead of administering field sobriety tests, Defendants should have
        requested E.M.S. or other emergency medical examination of Mr. Marquez at
        the scene along the road.

40.     Mr. Marquez was incapable of performing field sobriety tests, designed to
        detect the presence of alcohol, without almost falling over.

41.     Defendants performed field sobriety tests designed to detect the presence
        of alcohol knowing Plaintiff had already blown zero on a portable breath
        testing machine.

42.     Defendants searched Plaintiff's vehicle and found no evidence of illegal
        drug use or other criminal activity.

43.     Defendants examined Plaintiff's arms and body looking for signs of illegal
        drug use.

44.     There were no signs of illegal drug use on Mr. Marquez' arms or body.

8

45.     Defendants did not call for a drug recognition expert to investigate the

possibility of drug induced intoxication.

46.     Defendants found no evidence that Plaintiff had taken illegal drugs.

47.     Defendants recognized the possibility that Plaintiff was suffering a serious

medical condition.

48.     Defendants Martinez Jr. and Jones discussed whether they should try to

contact Plaintiff's wife to see what the medical problem was and to see if they

"could narrow this down."

49.     Despite Plaintiff's obviously serious medical condition Defendants

decided to arrest Plaintiff for driving while intoxicated and they arrested Mr.

Marquez at approximately 8:26 a.m. on September 24, 2009.

50.     Defendants took Plaintiff to a local medical center to draw blood as part of

their DWI investigation and the blood was drawn from Mr. Marquez' body at

approximately 9:35 a.m. on September 24, 2009.

51.     Despite Defendants' knowledge that Plaintiff may be suffering from a

serious medical condition, and despite being at a medical center, Defendants

chose not to have Plaintiff medically evaluated while he was at the hospital at

9:35 a.m. on September 24, 2009.

52.     Instead Defendants actively deprived Mr. Marquez from access to needed

medical care.

53.     Defendants transported Plaintiff away from medical care and took him to the sheriff's department, to wait for paperwork to be completed.

54.     During this time Plaintiff's symptoms became worse and his need for immediate medical care became more obvious.

55.     Plaintiff's condition became so bad he was unable to stand up without being assisted.

56.     Defendants Martinez Jr. and Jones completed their paperwork at their police station and then transported Mr. Marquez to the county jail (the Eddy County Detention Center).

57.     During this transport, Mr. Marquez' medical condition clearly and obviously continued to deteriorate, his mental state continued to deteriorate, his inability to balance or walk on his own worsened and his obvious need for immediate medical care continued to become more emergent.

58.     Defendants Martinez Jr. and Jones had to physically assist Mr. Marquez into the jail because Mr. Marquez could not walk or balance on his own.

59.     Defendants Martinez Jr. and Jones affirmatively deprived Mr. Marquez of medical attention by others at the jail as Martinez Jr. and Jones misrepresented to others that Mr. Marquez was D.W.I. or coming off drugs or narcotics of some kind.

60.     Defendant Jones was forced to hold on to Mr. Marquez throughout the time he was taken to the sheriff's office and eventually to the jail.

61.     Defendants, by their above referenced conduct, violated Mr. Marquez'

Constitutional right to adequate medical care and caused him severe permanent

life altering injury including past and future medical expenses, past and future

pain and suffering, past and future loss of income and earning capacity and past

and future loss of enjoyment of life.  Mr. Marquez' brain was swelling and he

was suffering permanent injury during this time.

62.     Defendants are responsible for Mr. Marquez' damages, attorney fees,

litigation costs, pre-judgment and post-judgment interest and any other relief

this Court deems just and appropriate.

## COUNT II.    DEFENDANTS WALKER, SALCIDO AND DANETTE MARTINEZ' VIOLATIONS OF MR. MARQUEZ' FOURTEENTH AMENDMENT RIGHT TO ADEQUATE MEDICAL CARE

63.     Plaintiff hereby incorporates by reference all prior allegations as if they

were stated herein in full.

64.     When Plaintiff arrived at the jail at some time before 10:30 a.m. on

September 24, 2009, Defendant Salcido immediately noticed something was

wrong with Mr. Marquez.

65.     During the time he was at the detention center, Defendant Danette

Martinez could see that something was seriously wrong with Mr. Marquez, but

she did not get him the medical help he needed.

66.     Defendant Salcido saw Defendants Martinez Jr. and Jones trying to help

Mr. Marquez stand up and walk.

11

67.     Defendant Salcido called for a nurse to come and check on Plaintiff and
Defendant nurse Walker first saw Mr. Marquez at or before approximately
10:30 a.m. on September 24, 2009.

68.     Defendants Salcido and Martinez had an affirmative obligation to refuse to
accept individuals into the jail if the jail is not capable of providing them with
adequate medical care.

69.     Under these circumstances, the jail was clearly not capable of providing
adequate medical care to Mr. Irving Jose Marquez at the time he was presented
to the facility.

70.     Defendants Salcido and Martinez had an affirmative obligation to refuse to
accept individuals into custody if the jail is not capable of providing them with
adequate medical care.

71.     Defendants Salcido and Martinez cannot accept a person into jail custody
without first performing an adequate medical screening prior to acceptance of
the person.

72.     Prior to accepting custody of any inmate, Defendants Walker, Salcido and
Martinez had a duty to determine that the individual is not in need of
immediate mediation attention.

73.     These Defendants had a duty to observe the incoming inmate to determine
if there is some obvious problem requiring attention.

12

74.     At intake, Mr. Marquez exhibited signs and symptoms of obvious problems requiring medical attention.

75.     These Defendants had a duty to refuse to accept any inmate if the inmate's condition required medical attention.

76.     If an individual is turned away from the Eddy County Detention Center at intake due to medical reasons, the arresting officer must obtain medical clearance from the hospital before the inmate can be accepted into the jail.

77.     These individuals should have turned away Mr. Marquez at intake which would have then required the arresting officer to take Mr. Marquez back to the hospital for medical evaluation.

78.     Mr. Marquez' condition clearly required medical attention when he was presented for intake to the Eddy County Detention Center.

79.     Despite Defendants Salcido and Martinez's knowledge that Plaintiff was likely suffering from a severe medical condition they chose to book Plaintiff into custody.

80.     Defendant Salcido booked Mr. Marquez into custody without having an appropriate medical screening performed upon Mr. Marquez prior to acceptance.

81.     Defendant Salcido watched Defendant Walker, the nurse responsible for performing an adequate medical screening, fail to provide an adequate medical screening of Plaintiff at approximately 10:30 a.m. on September 24, 2009.

13

82.     Defendant Walker's essential duties required that, at intake, she take Mr. Marquez' temperature, pulse, blood pressure and other vital signs to detect and report to a physician deviations from the normal presentation.

83.     At the time Defendant Walker first saw Mr. Marquez, he was obviously in an altered mental state with distinct deviations from normal behavior in that his attention span was easily distracted, his comprehension level was below average, and his though processes were sluggish.

84.     At the time Defendant Walker first saw Mr. Marquez, he was also in such a physically deteriorated state that he could not balance, stand or walk on his own or focus on others trying to get his attention.  He was also running a temperature.

85.     Mr. Marquez' mental and physical presentation, upon initial presentation to Defendant Walker, presented an obvious need for immediate medical care and Defendant Walker acted with deliberate indifference to his need for immediate medical attention.

86.     Defendant Walker did not to take Mr. Marquez' temperature, pulse, blood pressure or other vital signs when she first saw Mr. Marquez at approximately 10:30 a.m. on September 24, 2009.

87.     Defendant Walker failed to investigate why Plaintiff was unable to stand properly or communicate in an appropriate manner.

88.     Rather than examine Mr. Marquez, Walker conferred with Martinez Jr. who misrepresented to Walker that Mr. Marquez was "coming off some narcotic or drug."  Blood test results later revealed no narcotics or drugs.

89.     Defendant Walker thereafter instructed the Detention Center officers to accept Mr. Marquez into custody and detain him despite the fact that there was obviously something else wrong with Mr. Marquez which required immediate medical attention.

90.     While handcuffed to the wall at the detention center, Mr. Marquez was clearly seen by Defendants Salcido and Danette Martinez as he, Mr. Marquez was struggling to maintain his balance.

91.     Defendant Danette Martinez had to physically hold up Mr. Marquez while efforts were made to obtain a booking photo of Mr. Marquez and Defendant Danette Martinez had to clap her hands in an effort to get Mr. Marquez to focus on her for the photo.

92.     Danette Martinez knew, from the circumstances that existed, that something was wrong with Mr. Marquez and that he needed medical attention but she did not obtain medical attention for him.

93.     Defendant Salcido watched Plaintiff's condition deteriorate even further to the point he was no longer able to answer questions, unable to provide fingerprints, unable to undress himself and unable to sign any of the booking paperwork.

94.     Plaintiff was in a semi conscious condition, sweating profusely and no longer able to communicate.

95.     Defendants Salcido and Danette Martinez watched Plaintiff in this condition for approximately two and one half hours and did not, during this time, seek medical attention for Mr. Marquez.

96.     Defendant Salcido eventually called Defendant Walker back to perform a medical examination after hours had passed since Defendant Walker's first observation of Mr. Marquez.

97.     Defendant Walker finally took Plaintiff's vital signs and determined he was running a temperature in excess of 104 degrees.

98.     Eventually Plaintiff was transported to the local hospital where he was airlifted to a larger facility where he was diagnosed with West Nile Virus.

99.     By their conduct, Defendants Walker, Salcido and Danette Martinez acted with deliberate indifference to Mr. Marquez' serious medical needs in violation of Mr. Marquez' rights as a pre-trial detainee under the Fourteenth Amendment to the United States Constitution to be free of cruel and unusual punishment.

100.    The conduct of Defendants Walker, Salcido, and Danette Martinez was a direct and proximate cause of the deprivation of Mr. Marquez' clearly established Fourteenth Amendment rights and a cause of Mr. Marquez' permanent life altering injuries.

101.    Defendants Walker, Salcido and Danette Martinez, by their above reference conduct, violated Mr. Marquez' Constitutional right to adequate medical care and caused him severe permanent life altering injury including past and future medical expenses, past and future pain and suffering, past and future loss of income and earning capacity and past and future loss of enjoyment of life.

102.    These Defendants are responsible for Mr. Marquez' damages, attorney fees, litigation costs, pre-judgment and post-judgment interest and any other relief this Court deems just and appropriate.

## COUNT III.  DEFENDANT WALKER'S PROFESSIONAL NEGLIGENCE / MEDICAL NEGLIGENCE

103.    Plaintiff hereby incorporates by reference all prior allegations as if they were stated herein in full.

104.    Defendant Walker was at all material times a nurse licensed by the state of New Mexico.

105.    Defendant Walker was at all material times a health care provider as defined in New Mexico law.

106.    Defendant Walker was at all material times acting within the scope of her duties as a nurse providing health care services to inmates while employed by the Eddy County Detention Center.

17

107.    Defendant Walker had a duty to exercise due care in her providing of health care services to Irving Marquez and other inmates at the detention center.

108.    Defendant Walker failed to exercise due care in her medical treatment of Mr. Irving Jose Marquez.

109.    Irving Jose Marquez was entitled to receive health care from Defendant Walker of a kind and quality in keeping with community and professional standards for providing similar care and sufficient to avoid an unreasonable risk of injury to patients.

110.    Defendant Walker breached her duty of care by failing to provide adequate medical screening of and care to Mr. Marquez in light of his presentation and by failing to take his temperature, pulse, blood pressure, or other vital signs and by failing to notify a physician of Mr. Marquez' medical condition.

111.    As a result of Defendant Walker's medical negligence and professional misconduct, Irving Jose Marquez suffered permanent life altering injury including past medical expenses, future medical expenses, past and future pain and suffering, past and future loss of earnings and earning capacity and past and future loss of enjoyment of life.

112.    Mr. Marquez did not cause or contribute in any way to these injuries.

113.    The New Mexico Tort Claims Act waives immunity for Defendant Walker's conduct pursuant to, among other provisions, Sections 41-4-10 (Liability; health care providers) and 41-4-9 (liability; medical facilities).

## COUNT IV.   DEFENDANT WALKER'S
## PROFESSIONAL NEGLIGENCE / RES IPSA LOQUITUR

114.    Plaintiff hereby incorporates by reference all prior allegations as if they were stated herein in full.

115.    Defendant Walker proximately caused the injuries and damages suffered by Irving Jose Marquez.

116.    It was Defendant Walker's responsibility to examine and assess Mr. Marquez' condition as well as provide appropriate screening, care and treatment of Mr. Marquez.

117.    The events causing the injuries and damages suffered by Irving Marquez were of the kind which do not ordinarily occur in the absence of negligence on the part of Defendant nurse Walker.

118.    Thus, the doctrine of res ipsa loquitur is applicable as a theory of negligence.

## COUNT V:   VIOLATION OF AMENDMENT XIV OF THE U.S. CONSTITUTION
## AND TITLE 42 U.S.C. SECTION 1983
## (Claims against Defendant Sheriff Mendoza and the Board of County Commissioners)

119.    Plaintiff hereby incorporates by reference all prior allegations as if they were stated herein in full.

120.    The Sheriff's department had a policy, pattern and practice of depriving

pre-trial detainees of their Constitutional right to adequate medical attention.

121.    Irving Jose Marquez was denied access to clearly needed medical

attention.

122.    Many people arrested or detained by Sheriff Department deputies are

routinely and customarily denied of access to needed medical attention.

123.    The conduct of depriving individuals of medical attention is well known

and accepted within the Sheriff's Department.

124.    There is a failure to supervise and train in the Sheriff's Department on the

important issue of a person's right to medical attention.

125.    Defendant Mendoza, as the Sheriff of Eddy County, and Defendant the

Board of County Commissioners were the final decision-makers and policy-

makers for the County in regard to the operation of the Eddy County Sheriff's

Department.

126.    Defendants Mendoza and the Board of County Commissioners had access

to all books, reports, and records of the Sheriff's office including records

pertaining to the qualifications and activities engaged in by deputies and

reserve deputies in relation to their deprivation of necessary medical care to

those persons they detain or arrest.

127.    Defendants Mendoza and the Board of County Commissioners had a duty

to exercise due care in the supervision of all Sheriff's office activities including

the supervision of arrest and detainment activities engaged in by his deputies
and reserve deputies in relation to providing access to necessary medical
attention.

128.    Defendant Mendoza had a duty to assure that the Sheriff's Department
complied with its obligations in terms of staffing, policy formation and
implementation, training and supervision of department employees.  In
particular, Defendants Mendoza and the Board of County Commissioners had a
duty to assure that the Sheriff's Department complied with its obligation to
have and ensure compliance with appropriate policies and procedures in the
areas of arresting, detaining, and providing medical care to arrested or detained
persons.

129.    Defendants Mendoza and the Board of County Commissioners had a duty
to refrain from violating Mr. Marquez' constitutional rights, in particular, to
assure that Mr. Marquez and other similarly situated individuals were provided
with humane treatment including access to needed medical attention while
detained, arrested, in custody, or under the control of any Sheriff's Department
officers or employees including any deputy or reserve deputy.

130.    Defendants Mendoza and the Board of County Commissioners breached
their duties through their deliberate indifference to the Sheriff Department's
failure to hire qualified deputies and reserve deputies, formulate and enforce
appropriate policies, provide adequate training and supervision and to

21

otherwise assure that Mr. Marquez, and other similarly situated individuals were provided with medical attention while under the arrest, detainment, confinement or control of Sheriff's Department deputies, officers, or employees.

131.    The conduct of Defendants Mendoza and the Board of County Commissioners deprived Mr. Marquez of his constitutional rights under the Fourteenth Amendments to the United States Constitution and constituted cruel and unusual punishment.

132.    Defendants Mendoza and the Board of County Commissioners' conduct was intentional, unreasonable, reckless, wanton, willful and deliberately indifferent to the rights of Mr. Marquez and other similarly situated persons.

133.    The conduct of Defendants Mendoza and the Board of County Commissioners was a direct and proximate cause of the deprivation of Mr. Marquez' clearly established Fourteenth Amendment rights as well as the permanent life altering injuries suffered by Mr. Marquez as a result of the denial of obviously needed medical attention.

**COUNT VI:   VIOLATION OF AMENDMENT XIV OF THE U.S. CONSTITUTION AND TITLE 42 U.S.C. SECTION 1983**
**(Claims against Defendant acting Warden Funk and the Board of County Commissioners)**

134.    Plaintiff hereby incorporates by reference all prior allegations as if they were stated herein in full.

22

135.    Defendant Funk was on duty at the Eddy County Detention Center on
September 24, 2009, when Mr. Marquez was presented to the jail.

136.    Defendant Funk was required to but failed to supervise his employees at
the jail on September 24, 2009.

137.    On September 24, 2009, Defendant Funk was required to but did not make
sure that his jail employees provide adequate intake screenings to inmates such
as Mr. Marquez.

138.    The Eddy County Detention Center had a policy, pattern and practice of
depriving pre-trial detainees of their Constitutional right to adequate medical
attention.

139.    While in the Detention Center, Irving Jose Marquez was denied access to
clearly needed medical attention by employees of the Detention Center under
the supervision of Defendant Funk.

140.    Many people are processed and detained by Eddy County Detention Center
officers, employees, or nurses without the mandated medical evaluation that
must be had at time of intake and prior to accepting any person into custody at
the Detention Center.

141.    People processed at the Detention Center are routinely and customarily
denied access to needed medical evaluations and to needed medical attention.

142.    The conduct of denying individuals of the mandatory medical evaluation is
well known and accepted within the Eddy County Detention Center.

23

143.    There is a failure to supervise and train in the officers and employees of the Eddy County Detention Center on the important issue of a pre-custodial medical evaluation at time of intake.

144.    Similarly, the conduct of denying detained individuals of needed medical attention is well known and accepted within the Eddy County Detention Center.

145.    There is a failure to supervise and train the officers and employees of the Eddy County Detention Center on the important issue of providing pre-trial detainees with necessary medical attention.

146.    Defendants Funk as the acting Warden of the Eddy County Detention Center and the Defendant Board of County Commissioners were the final decision-makers and policy-makers for the County in regard to the operation of the Eddy County Detention Center, including but not limited to the performance of pre-custodial medical evaluations and the provisions for access to medical care needed by detainees in the custody of the Detention Center.

147.    Defendants Funk and the Board of County Commissioners were responsible for the safe operation of the Detention Center.

148.    Defendants Funk and the Board of County Commissioners had access to all books, reports and records of the detention center including records pertaining to the qualifications and activities engaged in by employees of the detention center.

24

149.    Defendants Funk and the Board of County Commissioners had a duty to exercise due care in the supervision of all Detention Center activities including the supervision of performing the pre-acceptance medical evaluation of pre-trial detainees, including Mr. Marquez, and the providing of necessary medical care to pre-trial detainees, including Mr. Marquez.

150.    Defendants Funk and the Board of County Commissioners had a duty to assure that the detention center complied with its obligations in terms of staffing, policy formation and implementation, training and supervision of detention center employees.

151.    In particular, Defendants Funk and the Board of County Commissioners had a duty to assure that the detention center complied with its obligation to have and ensure compliance with appropriate policies and procedures in the area of performing medical evaluations prior to accepting individuals into custody, screening individuals for medical needs, and providing needed medical care to arrested or detained persons brought to the detention center.

152.    Defendants Funk and the Board of County Commissioners had a duty to refrain from violating Mr. Marquez' constitutional rights, in particular, to assure that Mr. Marquez and other similarly situated pre-trial detainees were provided with adequate medical treatment while under the control or in custody of any detention center employee including any booking officer or nurse.

153.    Defendants Funk and the Board of County Commissioners breached their duties by their deliberate indifference to the detention center's failures to hire qualified officers and nurses, formulate and enforce appropriate policies, provide adequate training and supervision and to otherwise assure that pre-trial detainees including Mr. Marquez, and other similarly situated pre-trial detainees, are provided with medical evaluations prior to acceptance and thereafter with adequate medical treatment while under detainment, confinement, custody or control of detention center employees.

154.    The conduct of Defendants Funk and the Board of County Commissioners deprived Mr. Marquez of his constitutional right to due process under the Fourteenth Amendment and constituted cruel and unusual punishment of a pre-trial detainee.

155.    Defendants Funk and the Board of County Commissioners conduct was intentional, unreasonable, reckless, wanton, willful and deliberately indifferent to the rights of Mr. Marquez and other similarly situated persons while under the detainment, confinement, custody, or control or in the care of detention center employees.

156.    The conduct of Defendants Funk and the Board of County Commissioners was a direct and proximate cause of the deprivation of Mr. Marquez' clearly established Fourteenth Amendment rights and were a cause of Mr. Marquez' permanent life altering injuries.

## COUNT VII: OTHER CLAIMS BROUGHT UNDER STATE LAW
### (against Mendoza, Martinez Jr., Jones, Funk, Walker, Salcido, and Danette Martinez)

157.    Plaintiff hereby incorporates by reference all prior allegations as if they were stated herein in full.

158.    The New Mexico Tort Claims Act waives immunity for liability for, among other things, personal injury, bodily injury, resulting from assault, battery, false imprisonment, false arrest, or deprivation of any rights, privileges or immunities secured by the constitution or laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties, Section 41-4-12.

159.    The New Mexico Tort Claims Act waives immunity for liability for, among other things, personal injury and bodily injury resulting from the negligent operation of any infirmary, NMSA Section 41-4-9.

160.    The New Mexico Tort Claims Act waives immunity for liability for, among other things, personal injury and bodily injury resulting from the negligence of public employees licensed by the state or permitted by law to provide health care services while acting within the scope of their duties of providing health care services, NMSA Section 41-4-10.

161.    The New Mexico Tort Claims Act waives immunity for liability for, among other things, personal injury and bodily injury resulting from the negligent maintenance of a building, NMSA Section 41-4-6.

162.    The waivers of immunity apply to the conduct of the Defendant officers of
the Sheriff's Department as well as the officers and employees of the Detention
Center.

163.    Defendants have a duty to provide all potential inmates with an adequate
medical screening before accepting them into their facility.

164.    Defendants have a duty to ensure this medical screening is done
immediately to all inmates who are suffering obvious symptoms of a serious
medical condition.

165.    Defendants frequently fail to provide this medical screening in a timely
fashion.

166.    Defendants noticed Plaintiff was suffering from unusual symptoms
affecting his ability to communicate, to stand, to dress, or to sign documents.

167.    Defendants noticed Plaintiff was suffering an extremely high temperature.

168.    Given these obvious medical symptoms, Defendants were on notice of the
need to provide an adequate medical screening immediately.

169.    Defendants failed to provide such a screening and allowed Plaintiff's
condition to deteriorate.

170.    This constitutes negligent maintenance of a building under the Tort Claims
Act.

171.    The Defendants' refusal or failure to follow or implement intake screening policies and procedures for the facility presents a danger to members of the public including Mr. Marquez and other similarly situated individuals.

172.    Defendants' refusal or failure to respond appropriately to emergency medical situations presents a threat to members of the public including Mr. Marquez and other similarly situated individuals.

173.    Defendants' refusal or failure to respond appropriately to emergency medical situations creates an unreasonable risk of injury to members of the public including Mr. Marquez and other similarly situated individuals.

174.    These Defendants refused or failed to follow proper intake medical screening procedures.

175.    These Defendants refused or failed to follow proper emergency medical response procedures.

176.    Plaintiff suffered permanent medical damage as a result of this delay to provide a medical screening at time of initial presentation at intake at the detention center.

177.    In addition, Defendant Walker provides medical care as part of the jail's infirmary.

178.    Defendant Walker did not follow the facility's own procedures to provide medical screenings to all inmates before they are accepted into the jail.

29

179.    Any medical assessment of Plaintiff by Defendant Walker was grossly inadequate.

180.    As such her negligence in failing to provide an adequate medical screening at the infirmary falls under Sections 41-4-9 and 41-4-10 of the Tort Claims Act.

181.    This negligence caused Plaintiff permanent injuries.

182.    The acts of the Defendants Mendoza, Martinez Jr., and Jones were in violation of Mr. Marquez' constitutional rights under the United States and New Mexico constitution and law as well as all other rights of Mr. Marquez and within the waivers of immunity set forth in the New Mexico Tort Claims Act.

183.    The conduct of the defendants constitutes false imprisonment of Mr. Marquez for which immunity for liability is waived under the New Mexico Tort Claims Act, 41-4-12.

184.    Given Plaintiff's life threatening medical condition he should not have been detained, or accepted into the jail.

185.    Plaintiff should have been transported to a medical facility capable of diagnosing and treating his symptoms.

186.    Defendants Martinez and Jones actually removed Plaintiff from a medical facility capable of such treatment.

187.    Defendants then booked Plaintiff into a jail incapable of providing adequate medical care.

188.   As such Defendants' conduct constitutes false imprisonment under the Tort
Claims Act.

189.   This false imprisonment caused permanent physical injury to Plaintiff.

190.   The conduct of Defendants Mendoza, Martinez Jr., Jones, Funk, Walker,
Salcido, and Danette Martinez constitutes false imprisonment.  These
Defendants jailed and held Mr. Marquez despite the fact that it was obvious
that he was not D.W.I. or coming off of drugs or narcotics, but rather there was
clearly something else wrong with him that required that he be immediately
taken to the hospital for emergency medical care.  Defendants' conduct
constitutes false imprisonment as Mr. Marquez did not consent and mentally
could not consent to his false imprisonment by these defendants.

191.   The conduct of these Defendants constitutes false imprisonment under the
law of the State of New Mexico in that these defendants falsely imprisoned Mr.
Marquez without his consent when he was in need of medical care and of a
mental state that he could not give consent to his confinement.  Given Mr.
Marquez' obvious mental condition including confusion, he was incapable of
giving consent.

192.   Defendant Martinez Jr.'s conduct as alleged in the preceding paragraphs
also constitutes battery upon Mr. Marquez by the unjustified placing of force
upon Mr. Marquez' person and the taking of blood from Mr. Marquez' body.

31

Given Mr. Marquez' condition, he clearly did not have the mental capacity to give consent.

193.    The conduct of all named Defendants as described in the preceding paragraphs constitutes negligence under the law of the State of New Mexico and was engaged in while these defendants were acting within the scope of their duties.

194.    Defendants Mendoza, Martinez Jr., and Jones violated Mr. Marquez' constitutional and common law rights, violated the policies and procedures of the Sheriff's Department, and engaged in conduct that they knew, or should have known, was below the standard of care imposed upon law enforcement officers such that they breached their duties and caused foreseeable injury to Mr. Marquez.

195.    Defendants Funk, Walker, Salcido and Danette Martinez violated Mr. Marquez' constitutional and common law rights, violated the policies and procedures of the Detention Center, and engaged in conduct that they knew or should have known was below the standard of care imposed upon nurses and intake or other officers employed at a detention center such that they breached their duties and caused foreseeable injury to Mr. Marquez.

196.    Defendant Walker, a nurse and health care professional, engaged in medical negligence in her treatment of Mr. Marquez as detailed in the foregoing paragraphs.

**COUNT VIII:      DELIBERATE INDIFFERENCE IN HIRING, TRAINING, SUPERVISION AND RATIFICATION OF UNCONSTITUTIONAL CONDUCT (Defendants Board of County Commissioners ("County"), Sheriff Mendoza, and acting Warden Funk)**

197.    Plaintiff hereby incorporates by reference all prior allegations as if they were stated herein in full.

198.    The County, Sheriff Mendoza, and Acting Warden Funk were the final policy and decision makers when it came to hiring, training, supervision, and ratification of the conduct of their officers and employees.

199.    Eddy County Sheriff's Office and the Eddy County Detention Center had a policy of detaining individuals and depriving them of necessary medical evaluations and necessary medical care.

200.    Many individuals have been arrested by officers or employees of the Sheriff's Department and then have been taken into custody by the Eddy County Detention Center without being provided necessary medical care or the mandatory medical evaluation at time of intake.

201.    The practice of depriving pre-trial detainees of access to medical care and of a medical examination is well known and accepted in the Sheriff's Department and Eddy County Detention Center.

202.    The actions of Defendants Martinez Jr., D. Jones, Walker, Salcido, and Danette Martinez were undertaken in the execution of Defendants County, Mendoza and Funk's pre-existing policies for the Sheriff's Department and

33

Detention Center which policies expressly or implicitly authorized the illegal conduct alleged herein.

203.     Specifically the County failed to adopt or implement appropriate procedures requiring the proper and adequate provisions for medical care to individuals under the circumstances presented hereinabove and medical evaluations.

204.     The policy of the Defendant County or alternatively the gross negligence directly caused the violations of Mr. Marquez' rights.  Furthermore, the County was deliberately indifferent in training, supervision, and disciplining of Sheriff's Department and Detention Center officers, nurses, employees, and staff on prior occasions which involved illegal arrests and wrongful deprivation of access to medical care and medical evaluations of other individuals in violation of the United States and New Mexico Constitution and contrary to common law.

205.     The County's failures constitutes a policy or custom of encouraging and authorizing the complained of acts.

206.     The County's failures constitute ratification of the previously existing policies, customs, and procedures and illegal conduct complained hereinabove.

## JURY DEMAND

Mr. Marquez demands a jury for all matters triable to a jury.

WHEREFORE, Mr. Irving Jose Marquez requests the Court enter judgment in his favor against the Defendants and for compensatory damages, punitive damages, prejudgment interest, and; attorneys' fees and costs pursuant to 42 U.S.C. Section 1988 and any other relief that justice requires.

Respectfully submitted by:
CARTER & VALLE LAW FIRM, P.C.

Susan H. Widner
CD Carter III
Richard J. Valle
8012 Pennsylvania Circle N.E.
Albuquerque, NM 87110
Telephone (505) 888-4357
Facsimile (505) 883-5613
Email: shw@carterlawfirm.com
Email: rv@carterlawfirm.com

and

Matthew Coyte
Coyte Law PC
1000 2nd St. NW
Albuquerque, NM 87102-2216
Telephone (505) 244-1406
Facsimile (505) 244-1406
Email: mcoyte@earthlink.net

*Attorneys for Mr. Irving Jose Marquez*